IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TOMMIE L. AMBROSE** | * |
| | * |
| v. | * Civil No. JKS-12-3161 |
| | * |
| **CAROLYN W. COLVIN** | * |
| **Acting Commissioner of Social Security** | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Tommie L. Ambrose brought this action pursuant to 42 U.S.C. § 405(g) for review of a final administrative decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under the Social Security Act (the Act), 41 U.S.C. §§ 401–433. Both parties' motions for summary judgment are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Ambrose's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

1. **Background.**

Ambrose applied for DIB benefits on March 20, 2007, seeking a period of disability beginning on September 2, 2000. (R. 105). The application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on January 21, 2011, at which Ambrose was represented by counsel and amended his onset date to April 22, 2007. (R. 133). On February 22, 2011, the ALJ found that Ambrose was not disabled within the meaning of the Act, (R.16), and the Appeals Council denied his request for review. (R.1). Thus, the ALJ's determination became the Commissioner's final decision.

## 2. ALJ's Decision.

The ALJ evaluated Ambrose's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520. First, the ALJ determined that Ambrose had not engaged in substantial gainful activity from April 22, 2007, the alleged onset date, through December 31, 2007, his date last insured. (R. 11). At step two, the ALJ concluded that Ambrose suffered from chronic right knee and hip pain which were severe impairments. (R. 11). At step three, the ALJ determined that Ambrose did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12). Further, the ALJ found that Ambrose had the Residual Functional Capacity (RFC) to perform sedentary work through the date last insured, but required a sit/stand option, cannot climb ropes, ladders or scaffolds, can stoop occasionally, and has moderate difficulties in concentration, persistence and pace due to pain, which limits him to unskilled tasks. *Id.* At step four, the ALJ found that Ambrose was unable to perform any past relevant work. (R. 14). At step five, the ALJ found, based on testimony from a vocational expert (VE), that jobs exist in significant numbers in the national economy that Ambrose could perform. As a result, the ALJ determined that Ambrose was not disabled within the meaning of the Act. (R. 15-16).

## 3. Standard of Review.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a

preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision when it is supported by substantial evidence. *Id.*

## 4. **Discussion.**

Ambrose claims that the ALJ failed to properly compare his medical evidence to the Listing of Impairments (LOI) in 20 C.F.R., Part 404, Subpart P, Appendix 1. Second, Ambrose claims that the ALJ improperly weighed the medical opinion evidence, failing to give proper weight to the opinions of his treating physicians. Finally, Ambrose claims that the ALJ erroneously assessed his subjective complaints of pain.

A. Comparison to Listing of Impairments.

Ambrose claims that the ALJ erred in finding that he did not meet or medically equal the impairments in Section 1.02A of the LOI. This listing required him to demonstrate dysfunction of a joint, characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion, such that the dysfunction resulted in an inability to ambulate effectively. He was also required to present findings of joint space narrowing, bony destruction, or ankylosis of the affected joint. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A.

When there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments," the ALJ must identify the relevant impairment or impairments in the LOI and "compare each of the listed criteria to the evidence of the claimant's symptoms." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645–47 (D. Md.

3

1999) (citing *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986)); *see also McCall v. Astrue*, 2011 U.S. Dist. LEXIS 64402 at *4–5 (D. Md. 2011). Section 1.02, in relevant part, provides the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. In the instant case, the ALJ specifically found that Ambrose did not meet Listing 1.02.

Ambrose contends that he met the first element of the listing because his medical records demonstrate that he "suffers from extensive degenerative osteoarthritis of the right knee" which required arthroscopic debridement, met the second element because his medical records repeatedly note his chronic pain, stiffness, and limited range of motion, and demonstrated an inability to ambulate effectively through medical records and his testimony. ECF No. 12-1 at 20. He also contends that the ALJ's consideration of this listing was cursory and did not involve a comparison of each of the listed criteria to his symptoms.

Because Ambrose was previously found not disabled as of April 21, 2007, *Ambrose v. Astrue*, No. TMD 07-2642 (D. Md. Dec. 8, 2008), the medical evidence that postdates that decision must establish that his condition worsened between that decision and his date last insured of December 31, 2007. The ALJ discussed the medical evidence postdating the previous decision, noting that on November 20, 2007, the right knee examination showed a mild varus deformity with mild effusion and mild tricompartmental arthrosis, (R. 205) and on April 22, 2008, the left antalgic gait was described as mild, and it was reported that the knee was "becoming more painful." (R. 204). The ALJ also pointed to a progress note from April 9,

2009, which indicated that Ambrose ambulated with a left antalgic gait, used a cane and brace, had tenderness along the joint line both medially and laterally, and experienced petellofemoral crepitus with flexion/extention, which was mildly restricted. (R. 12, 202). Furthermore, records dated October 8, 2009, indicated a slight antalgic gait and only mildly restricted range of motion. (R. 232). The ALJ also discussed records noting a boggy right knee and marked antalgic gait on January 1, 2010, (R. 230), only slight limitation in extension and flexion, (R. 226-28), and no gross instability on April 27, 2010 and June 8, 2010. (R. 227-28). Nevertheless, each report states that Ambrose is not fit for work duty.

These records provide substantial evidence to support the ALJ's finding that Ambrose did not meet Listing 1.02A. Viewing them as a whole, they indicate that Ambrose's condition did not worsen between April and December of 2007, and support the finding that Ambrose did not lack the ability to ambulate effectively. The antalgic gait during the relevant time period is described as slight, (R. 206), and the notes show that his condition was unchanged from previous examinations. (R. 205). Finally, the ALJ'S discussion compared the evidence to the criteria of the listing. Accordingly, the decision that Ambrose did not meet listing 1.02A is affirmed.

    B.   Weight of Treating Physician Opinions.

Ambrose argues that the ALJ erred in rejecting his treating physicians' opinions and instead gave more weight to the opinions of the State Agency physicians. An ALJ must consider the medical opinions in a claimant's record in conjunction with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). While the ALJ usually gives more weight to the opinion of a treating physician, that opinion should be accorded less weight when it is inconsistent with the other substantial evidence on the record. *See* 20 C.F.R. § 416.927(b)(2); *see also Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ is not required to give controlling weight to a

physician's opinion regarding the ultimate issue of a claimant's disability. 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 SSR LEXIS 2. Here, the ALJ considered the opinions of all physicians, including those of treating physicians, as well as the consistency of those opinions with the substantial evidence on the record. As noted, the treating physicians noted bogginess, effusion, and lack of full extension and flexion but did not view Ambrose as being in need of additional surgery. No instability was noted, the limitations in extension and flexion were only slight, and only conservative treatment with medication was prescribed. The ALJ cited all of these reasons in declining to give controlling weight to the treating physicians' conclusion that Ambrose was unable to work.

In addition, the ALJ determined that the ultimate opinions of the treating physicians, while not a model of clarity as to whether they were precluding Ambrose from his past actual work or from any work at all, were in any event not consistent with their own clinical observations. Thus, the opinions of the treating physicians were accepted to the extent they indicated that Ambrose could not return to his past relevant work, but the ALJ properly determined that these opinions did not warrant a finding that Ambrose was unfit for any type of work.

      C.  Analysis of Subjective Complaints.

Ambrose contends that the ALJ erred in determining that his statements concerning the intensity, persistence, and limiting effects of his pain complaints were not credible. When evaluating whether a person is disabled by subjective symptoms, an ALJ must follow a two-step process. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether the objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual symptoms alleged. 20

6

C.F.R. § 404.1529(b). If the claimant makes this threshold showing, the ALJ must evaluate the extent to which these symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1).

At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown solely by objective medical evidence. SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* The ALJ's opinion should be given great weight upon review because he has had the opportunity to observe the demeanor and determine the credibility of the claimant. *Shivley*, 739 F.2d at 989–90.

Here, the ALJ followed the mandated two-step process and found that although Ambrose's medically-determinable impairments could reasonably be expected to cause the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. (R. 13-14). The ALJ noted that Ambrose's hip pain improved after the replacement and treatment, showing good range of motion within its confines, and only slight discomfort on full weight bearing. (R. 205-06). The ALJ considered Ambrose's testimony as well, noting that he could stand for 25 minutes, sit less than one hour, and that medication provided temporary relief. (R. 13). The ALJ accepted this testimony in determining Ambrose's RFC. All of the evidence properly informed the weight that the ALJ accorded Ambrose's subjective complaints, as well as the ALJ's ultimate determination of his RFC.

## 5. **Conclusion.**

For the foregoing reasons, Ambrose's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

Date: August 15, 2013  /S/
JILLYN K. SCHULZE
United States Magistrate Judge